AO-106 (Rev: 06/09)-Application for Search Warrant

# UNITED STATES DISTRICT COURT

for the

Northern District of Oklahoma

*FILED*

*JUL 18 2025*

*Heidi D. Campbell, Clerk*
*U.S. DISTRICT COURT*

In the Matter of the Search of Information
Associated with *Telephone Numbers 304-607-
3949; and 304-470-9676;* controlled by
*TextNow, Inc.*

)
)
)
)
)

Case No. 25-MJ-610-CDL

**FILED UNDER SEAL**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

located in the __Northern__ District of __California__, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| **18 USC 1591** | **Sex Trafficking** |
| **18 USC 1952** | **Interstate Travel in Furtherance of Racketeering Activity** |
| **18 USC 2421** | **Transporting an Individual for Prostitution** |

The application is based on these facts:

**See Affidavit of BIA SA Kevin Lau, attached hereto.**

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days; _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Kevin Lau, BIA SA
*Printed name and title*

Subscribed and sworn to by phone.

Date: ___Jul 18, 2025___

_____
*Judge's signature*

City and state: __Tulsa, Oklahoma__

Christine D. Little, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| In the Matter of the Search of Information Associated with *Telephone Numbers 304-607-3949; and 304-470-9676;* controlled by *TextNow, Inc.* | Case No. _____ <br><br> **Filed Under Seal** |

### Affidavit In Support Of
### An Application for a Search Warrant

I, Kevin T. Lau, being first duly sworn, hereby depose and state as follows:

### Introduction and Agent Background

1.     I make this affidavit in support of an application for a search warrant for information associated with certain accounts that is stored at premises owned, maintained, controlled, or operated by TextNow, Inc. ("TextNow"), a voice over Internet Protocol ("IP") service, headquartered at 420 Wes Graham Way, 2nd Floor, Waterloo, Ontario, N2L 0J6, Canada, and accepting service at 300 Brannan St., Suite 201, San Francisco, California 94107. The information to be searched is described in the following paragraphs and in Attachment A. This Affidavit is made in support of an application for a Search Warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), to require TextNow to disclose to the government records and other information in its possession pertaining to the subscriber(s) or customer(s) associated with the accounts, including the contents of communications.

2.     I am a Special Agent ("SA") with the United States Department of the Interior – Bureau of Indian Affairs ("BIA") – Division of Drug Enforcement. I became a BIA SA in July 2017 when I was assigned to North Dakota, and in

November 2018, I was assigned to the United States Drug Enforcement Administration ("DEA") – Asheville Post of Duty ("APOD") in Asheville, North Carolina. Since September 2024, I have been assigned to the Oklahoma Bureau of Narcotics and Dangerous Drugs ("OBN") in Oklahoma City, Oklahoma. I am "an investigative or law enforcement officer of the United States," within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516 and Title 18 of the United States Code. As part of my duties, I have investigated numerous violations of federal law including, but not limited to drug offenses, homicides, human trafficking (i.e., sex trafficking), child exploitation, domestic violence, and assaults. Prior to becoming a BIA SA, and between 2012 and 2017, I was a Reserve Police Officer for the Locust Grove Police Department in Locust Grove, Oklahoma; I was a Detention Officer and then Deputy for the Tulsa County Sheriff's Office in Tulsa, Oklahoma; and I was a Police Officer for the BIA in Wyoming.

      3.     I have received training from several state, local, and federal law enforcement agencies throughout the United States. I am a graduate from the Council on Law Enforcement Education and Training ("CLEET") in Ada, Oklahoma and from the Federal Law Enforcement Training Center ("FLETC") in Artesia, New Mexico and Glynco, Georgia.

      4.     I have conducted and/or participated in many complex investigations involving illicit trafficking of drugs, firearms offenses, child exploitation offenses, and

human trafficking offenses. In connection with my official BIA duties, I investigate criminal violations of state and federal drug trafficking offenses, including but not limited to violations of 18 U.S.C. § 924(c) and 21 U.S.C. §§ 841 and 846. I also investigate criminal violations of state and federal Child Exploitation and Human Trafficking Offenses, including but not limited to violations of 18 U.S.C. §§ 1591, 2251, and 2252. I have been involved in utilizing a variety of investigative techniques to include, but not limited to physical and electronic surveillance; questioning of witnesses, suspects, and informants; applications for and executions of search, seizure, and arrest warrants; and evidence collection. I also have training and experience recognizing human trafficking incidences and common traits utilized by human traffickers. I have been the Affiant on search warrants related to drug offenses, firearm offenses, and child exploitation offenses. As an investigator, I have experience in the fundamentals of mobile communications and electronic and cellular data analysis.

5.     The facts in this affidavit come from information provided to me by the forms of reports, digital evidence, information told to me by other agents and witnesses, and my training and experience. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

6.     The facts in this affidavit come from information provided to me by the forms of reports, digital evidence, information told to me by other agents and witnesses, and my training and experience. This affidavit is intended to show merely

3

that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

7.      Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18 United States Code, Section 1591 (Sex Trafficking), Title 18 United States Code, Section 1952 (Interstate Travel in Furtherance of Racketeering Activity), and Title 18 United States Code, Section 2421 (Transporting an Individual for Prostitution) (the "Target Offenses") have been, are being, and will continue to be committed by John Edgar WILLIAMS IV, a/k/a "John the Baptist," a/k/a "Orange Juice," a/k/a "Tre57," a/k/a "Tre5," and Jeremy Mindez RUFF, a/k/a "J7," a/k/a "Payday," Savannah D'naisha May GAGE, a/k/a "Pretty," a/k/a "Pretty Banks," Nevaeh Charise COX, a/k/a "Vaeh," Trinity GOUDEAU, a/k/a "Bleu," Shavari MELTON, a/k/a "Vari,"and Ashley CHARLES, and other known and unknown conspirators. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, or fruits of these crimes as further described in Attachment B.

## JURISDICTION

8.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

4

**Probable Cause**

9.     Through the course of an ongoing investigation, law enforcement has discovered the involvement of WILLIAMS, RUFF, GAGE, COX, GOUDEAU, and MELTON in a Sex Trafficking Operation ("STO"). In this context, a STO is defined as an organization comprised of individuals participating in various forms of criminality in furtherance of the organization, to include the use of force, fraud, and/or coercion in furtherance of prostitution; narcotics and/or firearms trafficking; robbery; acts of violence; money laundering; crossing of state borders for the purpose of commercial sex; use of the internet to facilitate commercial sex through recruitment, advertisement, and coercion to engage in interstate travel for commercial sex acts.

10.    The individuals involved in the STO act in concert and independently at times, primarily in commercial sex trafficking. Their coordination includes sharing information about victims and law enforcement activity, sharing of money derived from commercial sex acts, posting of commercial sex advertisements, and providing interstate transportation for commercial sex activity. Members of the STO, both sex traffickers and commercial sex workers, live in the Tulsa area, which is within the Northern District of Oklahoma, except for RUFF who lives in Dallas, Texas.

11.    The investigation began as a series of independent state cases investigated by TPD Human Trafficking/VICE unit. Investigators obtained state warrants for various cellphones, social media accounts and financial accounts. In

5

January of 2025, the case was adopted by the Unites States Attorney's Office. The case is currently being investigated by Homeland Security Investigations, the Bureau of Alcohol, Tobacco, and Firearms, United States Marshalls Service, Bureau of Indian Affairs, and the Muscogee (Creek) Lighthorse.

12.    Law enforcement has discovered approximately twenty different women used by the STO. These women have been identified through reviews of the material obtained through search warrants, interviews, and through reviewing online advertisements for commercial sex. Three of the victims are minors and have been recovered. Investigators are familiar with the identifiers, names, aliases, and appearance of these women, and all of this information has been relayed to me through various reports and verbally. I have also become familiar with the physical appearances of members of the STO.

13.    I know that individuals involved in commercial sex trafficking routinely use aliases to communicate with commercial sex purchasers, commercial sex workers, and other individuals involved in various aspects of the business. Sex traffickers frequently use multiple phone numbers, internet phone applications, and social media accounts to recruit, promote, and discuss commercial sex acts. Based upon my training and experience investigating STOs, and information provided to me by other investigators, I know people associated with commercial sex work use specific slang or code words. For example, "304" is a reference to a commercial sex worker, "qv" is a reference to a "quick visit" appointment, "outcall" is a reference to

6

the commercial sex worker traveling to the purchaser, and "16" is a reference to a sex trafficker.

14.    Based on my training and experience, I know sex traffickers routinely post on websites used to advertise for commercial sex. The website megapersonals.eu is a website frequently used by traffickers and I am familiar with this website based on my investigations. The advertisements typically include references to commercial sex acts using explicit and coded terminology. The advertisements will also include a location and contact phone number. I know these phone numbers are routinely temporary internet numbers that traffickers create for a limited amount of time to frustrate law enforcement detection. This has been confirmed through interviews with individuals associated with the STO and from a review of messages between members of the STO obtained through search warrants.

15.    Below is an example of the language and information typically included in ads such as those discussed herein. The below ad was published on January 10, 2025, from the number 304-306-9052, and identified the location as Corpus Christi, Texas. The title of the post was, "come see me baby 👅💦," and the post's body said:

> LiL Freak ❗ Extra nasty 🍑 Soft skin 🍑 Read all about it🍑 🍑 Peg Freak 🍑 Call me Soul snatcher 🍆 🚫 🔆 🍑 YOUR FAVORITE HELLO 🍆 💦 👅 and Your Hardest goodbye CAUTION 👅 💦 🍆 Slippery When Wet 🍆 Thick&Juicy 💦 Wet&Tight 🍆 A Real Freak 24/7 All Day And Night ...C U M Join Me For A Unforgettable Session Of All Action And Satisfaction 👅 💦 🍑 Big Juicy Booty and A Tight Juicy Kitty That will Have U Bust In No Time 🍆 👅 💦 IM THE

7

REAL HEAD DOCTOR 👅💦👅 And I Never Hold Back 😈 😈 👅 Even When Its Down My Throat 😈 LET ME TURN YOUR FREAKIEST FANTASIES INTO REALITY 💋 👅 👅 From The Sweetest Treat You Can Have Cum take a Trip To The Chocolate Factory 🍫 🍫 🍫 👅 👅 💆 💆 fetish friendly massages available 📱💗 🚫 NO POLICE/POLICIA 🚫 NO BB NO ❌ NO LOWBALLERS !!Must be Donation ready Willing to negotiate 💞 💞 💞 baddie 😊 👑 Fetish friendly 🖼 Content Creator 😊 Riding Pro/Head Queen 👑 😊 NEW RECENT PICS 1000% REAL 🖼 FACETIME OR DUO ONLY!!I don't send pictures so don't ask 🖐

16.    From my training and experience, I know the abbreviation "BB" means "bareback", or sexual intercourse without a condom. I also know the usage of FaceTime and/or Duo assists individuals engaged in commercial sex acts to identify and avoid undercover law enforcement officers.

17.    The below ad was published on January 17, 2025, from the number 304-306-9052, and identified the location as Tulsa, Oklahoma. The title of the post was, "LAST DAY!!!!!SNEAK AWAY & PLAY 🐿, THE PERFECT #1 CHOICE 🎯 PUT ME ON YOUR TO DO LIST 👀 🍑 😊 " and the post's body said:

MODEL TYPE WHAT YOU LIKE 💗🍑 IM EXOTIC 🖼& FINE LIKE WINE. 🍷 Are You Ready for a LOVELY TIME, with a Gorgeous Sexy Companion Like Me to Complete any task at hand. Let Me FullFill Your Fantasies 🖐 . Dont Worry, you take care of me ill take care of You. VERY DISCREET 😊 UPSCALE LOCATION 🏠 🖼30 + GENTLEMEN ONLY🖼 ✖NO LAW ENFORCEMENT✖ ✖NO LOW BALLING/ NO BB.. ✖ 🖼 🖼SCREENING IS REQUIRED 🖼 🖼

8

18.     Megapersonals.eu is based in the European Union, specifically Poland. So far, the company has voluntarily agreed to provide limited information. The information includes the email accounts used to create the ads, the photo IDs used to create the accounts, and the photographs of the creators holding the IDs to verify they are the same people. Throughout the course of the investigation, ads have been found using law enforcement databases that contain photographs and videos of individuals already confirmed as belonging to the STO. I have reviewed and spoken with other investigators who are familiar with the physical features and names of these individuals.

19.     Megapersonals.eu provided information of other ads posted with the identified email accounts. Over the course of the investigation, law enforcement officers have obtained state and federal search warrants for the email accounts identified as posting these ads. The email accounts have been linked to members of the STO based upon the subscription information, financial information, and contents of the accounts. Additionally, many of these accounts are referenced in other financial accounts like PayPal and Cash App. In total, law enforcement has received over seven thousand ads associated with the STO. The advertisements are for cities located in Oklahoma, Texas, Arkansas, Missouri, Kansas, and other states. The women identified in the commercial sex ads live in the Northern District of Oklahoma.

20.     Based upon interviews, reviews of the social media accounts, GMail accounts, and cell phone forensics, I know members of the STO use their cellular

9

devices to access social media messengers, other messaging applications, and the internet at large to communicate, post, and respond to commercial sex buyers about the ads. I also know that members of the STO will post commercial sex ads on behalf of other members of the STO. Further, members of the STO will have different facilitators create accounts on megapersonals.eu on behalf of the STO, and will then share this login information.

21.     As investigators reviewed various megapersonals.eu sex ads, investigators observed photos of members of the STO and victims. In addition to the photos, investigators observed telephone numbers associated with each individual post. Investigators queried the phone numbers in law enforcement databases and identified the provider for the phone numbers as TextNow. Below is specific information associated with each phone number listed in Attachment A.

### 304-607-3949

22.     As early as January 25, 2025, investigators located approximately twenty-two sex ads on megapersonals.eu, with the most recent ad posted on February 12, 2025. A review of the sex ads revealed the number 304-607-3949 was associated with all of them. The ads displayed multiple photos of three different females that investigators have identified as victims of this STO. Some of the locations and dates associated with 304-607-3949 are as follows:

   a. Post published on January 25, 2025, with a location in Tulsa, Oklahoma; and

   b. Post published on February 12, 2025, with a location in Tulsa, Oklahoma.

23.    In February of 2025, investigators obtained records from megapersonals.eu including information about the ads associated with 304-607-3949. The records provided registration and post information including the email address xrangewest@gmail.com. The records also included documents that contained the pictures required to create accounts on the website. The pictures associated with xrangewest@gmail.com were of CHARLES, who was holding her driver's license.

24.    Based on these facts, I believe the TextNow number 304-607-3949 was used on megapersonals.eu, a known commercial sex website, to communicate with sex customers, a/k/a "johns." I also believe this particular phone number was utilized in furtherance of CHARLES' other involvement in this STO, and will therefore contain information relevant to this ongoing investigation.

25.    On May 7, 2025, United States Magistrate Judge Christine D. Little authorized a search warrant for multiple TextNow numbers, including 304-607-3949 (*see* 25-mj-400). Upon service of the search warrant, TextNow advised that a particular number in Attachment A of that warrant of was not a valid TextNow number. I reviewed the attachment and observed an error to the number listed in Attachment A of 25-mj-400. The number listed in Attachment A of 25-mj-400 was **904**-607-3949, and not **304**-607-3949, as accurately listed in the affidavit and warrant. Therefore, I am requesting the issuance of this warrant for records associated with the accurate number, 304-607-3949.

11

### 304-470-9676

26.    As early as October 22, 2024, investigators located approximately seventeen sex ads on megapersonals.eu with the most recent ad posted on November 8, 2024. A review of the sex ads revealed that the number 304-470-9676 was associated with all of them. The sex ads displayed had multiple photos of COX. Some of the locations and dates associated with 304-470-9676 were/are:

    a. Post published on October 22, 2024, with a location in Tulsa, Oklahoma and

    b. Post published on November 8, 2024, with a location in Tulsa, Oklahoma.

27.    During this investigation, investigators obtained and reviewed data from megapersonals.eu associated with various commercial sex ads. This data included telephone numbers used in the posts, along with email addresses associated with the poster. The number 304-470-9676 was used by four (4) different email addresses between October 22, 2024, and November 8, 2024. The email addresses were identified as being identified by four (4) individuals, including GAGE and WILLIAMS.

28.    Based on these facts, I believe the TextNow number 304-470-9676 was used on megapersonals.eu, a known commercial sex website, to communicate with sex customers a/k/a "johns." I also believe this particular phone number was utilized in furtherance of WILLIAMS, GAGE, and COX's involvement in this STO and will contain information relevant to this ongoing investigation.

### Information Specific to Textnow

29.     In my training and experience, I have learned that TextNow is a VoIP
(Voice over Internet Protocol) service that allows users to text and call any number in
Canada & the USA. Additionally are able to purchase credits to make international
long distance calls. TextNow provides the user with a real phone number which can
be used on any smartphone, tablet or desktop computer with an Internet connection.
The application can be used on multiple devices under the same login at the same
time.

30.     In my training and experience, I know the TextNow app is available
for download via the App Store for most iOS devices such as the iPod touch, iPad
and iPhone, and on the Google PlayStore for Android devices (including Android
smartphones and Android tablets). We also have applications available for download
on our website for Windows and Mac computers, and computer users can also
access the TextNow service through our website with their web-browser.

31.     In my training and experience, I know all TextNow users are assigned
a 10-digit phone number identifier (three-digit area code and a seven-digit number).
Upon registration, the user may be assigned a local phone number based on their
location, if they have allowed TextNow to access this information. Alternatively, the
user can enter their desired area code; if a number with their desired area code is
available, the user can select a phone number. If TextNow does not have a phone
number with their desired area code available, the user will be prompted to enter a
new area code. TextNow users also have the ability to port-in a phone number from

another carrier. There will only ever be one phone number assigned to a TextNow account at a time.

32.    In my training and experience, I know TextNow collects and retains a variety of information from their users. The type of user and data collected determines the retention period for each.

33.    In my training and experience, I know TextNow stores Internet Protocol ("IP") logs, call logs, message logs, and content, including retrieved and unretrieved voicemail, text, and multimedia messages for TextNow users and may be located on the computers of TexctNow. Further, I am aware that computers located at TextNow contain information and other stored electronic communications belonging to unrelated third parties.

34.    Among the services commonly offered by wireless phone providers, such as TextNow, is the capacity to send short text or multimedia messages (photos, audio, or video) from one subscriber's phone or wireless device to another phone or wireless device via one or more wireless providers. This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging." Based on my knowledge and experience, I believe that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored by TextNow for short periods incident to and following their transmission. In addition, providers occasionally retain printouts from original storage of text messages for a particular subscriber's account.

14

35.    Wireless phone providers typically retain certain transactional information about the use of each telephone, voicemail, and text-messaging account on their systems. This information can include log files and messaging logs showing all activity on the account, such as local and long distance telephone connection records, records of session times and durations, lists of all incoming and outgoing telephone numbers or e-mail addresses associated with particular telephone calls, voicemail messages, and text or multimedia messages. Providers may also have information about the dates, times, and methods of connecting associated with every communication in which a particular cellular device was involved.

36.    Wireless providers may also retain text messaging logs that include specific information about text and multimedia messages sent or received from the account, such as the dates and times of the messages. A provider may also retain information about which cellular handset or device was associated with the account when the messages were sent or received. The provider could have this information because each cellular device has one or more unique identifiers embedded inside it. Depending upon the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Station Equipment Identity ("IMEI"). When a cellular device connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or

15

tower in order to obtain service, and the cellular antenna or tower records those identifiers as a matter of course.

37.    Wireless providers also maintain business records and subscriber information for particular accounts. This information could include the subscribers' full names and addresses, the address to which any equipment was shipped, the date on which the account was opened, the length of service, the types of service utilized, the ESN or other unique identifier for the cellular device associated with the account, the subscribers' Social Security Numbers and dates of birth, all telephone numbers and other identifiers associated with the account, and a description of the services available to the account subscribers. In addition, wireless providers typically generate and retain billing records for each account, which may show all billable calls (including outgoing digits dialed). The providers may also have payment information for the account, including the dates, times and sometimes, places, of payments and the means and source of payment (including any credit card or bank account number).

38.    In some cases, wireless subscribers may communicate directly with a wireless provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Wireless providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

39.    As explained below, information stored at the wireless provider,

including that described above, may provide crucial evidence of the "who, what,

why, when, where, and how" of the criminal conduct under investigation, thus

enabling the United States to establish and prove each element or alternatively, to

exclude the innocent from further suspicion. In my training and experience, the data

pertaining to a particular cellular device that is retained by a wireless provider can

indicate who has used or controlled the cellular device. This "user attribution"

evidence is analogous to the search for "indicia of occupancy" while executing a

search warrant at a residence. For example, data collected at the time of account

sign-up, information relating to account payments, and communications (and the

data associated with the foregoing, such as date and time) may indicate who used or

controlled a cellular device at a relevant time. Further, such stored electronic data

can show how and when the cellular device and associated cellular service were

accessed or used. Such "timeline" information allows investigators to understand the

chronological context of cellular device usage, account access, and events relating to

the crime under investigation. This "timeline" information may tend to either

inculpate or exculpate the cellular device owner. Additionally, information stored by

the wireless provider may indicate the geographic location of the cellular device and

user at a particular time (e.g., historic cell-site location information; location

integrated into an image or video sent via text message to include both metadata and

the physical location displayed in an image or video). Last, stored electronic data

may provide relevant insight into the state of mind of the cellular device's owner

17

and/or user as it relates to the offense under investigation. For example, information relating to the cellular device in the possession of the wireless provider may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

### Information to Be Searched and Things to Be Seized

40.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require TextNow to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

### Conclusion

41.     Based on the information above, I submit that there is probable cause to believe that violations of Title 18 United States Code, Section 1591 (Sex Trafficking), Title 18 United States Code, Section 1952 (Interstate Travel in Furtherance of Racketeering Activity), and Title 18 United States Code, Section 2421 (Transporting an Individual for Prostitution) have occurred, and evidence of such violations will be found in data associated with the TextNow numbers listed in Attachment A.

42.    The government will execute this warrant by serving the warrant on TextNow. Because the warrant will be served on TextNow, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

43.    Lastly, I apply to the Court to seal this Affidavit, Application for Search Warrant, and Search Warrant. There is a pending and ongoing investigation in this case involving multiple suspects and multiple victims across several states. Disclosure of the Affidavit, Application for Search Warrant, and Search Warrant in this case could jeopardize further investigative efforts and give the suspects opportunity to destroy or hide evidence and intimidate potential witnesses.

Respectfully submitted,

Kevin T. Lau
Special Agent
Bureau of Indian Affairs

Subscribed and sworn to before me on July 18, 2025

CHRISTINE D. LITTLE
UNITED STATES MAGISTRATE JUDGE

19

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with Telephone Numbers:

- 304-607-3949
    - o  For the date range of January 25, 2025 – February 12, 2025
- 304-470-9676
    - o  For the date range of October 22, 2024 – November 8, 2024

That is stored at premises owned, maintained, controlled, or operated by

TextNow, Inc. ("TextNow"), a wireless provider headquartered at headquartered at

420 Wes Graham Way, 2nd Floor, Waterloo, Ontario, N2L 0J6, Canada and

accepting services at 300 Brannan St., Suite 201, San Francisco, California 94107

## ATTACHMENT B

### Particular Things to be Seized

### I.    Information to be disclosed by TextNow, Inc.

To the extent that the information described in Attachment A is within the possession, custody, or control of TextNow, regardless of whether such information is located within or outside of the United States, and including any messages, records, files, logs, or information that have been deleted but are still available to TextNow or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), TextNow is required to disclose the following information to the government for each account or identifier and the date range listed in Attachment A:

<ol type="a" style="list-style-type: none">
<li>a.    All subscriber data to include, but not limited to username, phone number, name (if provided), email address, date of birth (if provided), phone ownership from date, phone ownership to date, registration date, registration Internet Protocol ("IP") address (if available), plan type, device identification (Google Ad ID for Android devices or IDFV for iOS devices); and ICCID (if available);</li>
<li>b.    All billing information (if available);</li>
<li>c.    All message log information, to include content of the messages;</li>
<li>d.    All call log information;</li>
<li>e.    All IP logs to include, but not limited to logs into the account, when messages are read, when messages are sent, when changes to account settings;</li>
<li>f.    All available media to include, but not limited images, videos, and voicemails sent or received by the TextNow user;</li>
<li>g.    All voice mail, text, and multimedia messages stored and presently contained in, or on behalf of the account or identifier; and</li>
</ol>

h.    All records pertaining to communications between TextNow and any person regarding the account or identifier, including contacts with support services and records of actions taken.

i.    Any records of accounts associated by machine cookies or associated accounts being utilized by the same device(s).

The Provider is hereby ordered to disclose the above information to the government within **14 days** of issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes evidence, fruits, contraband, and instrumentalities of violations of Title 18 United States Code, Section 1591 (Sex Trafficking), Title 18 United States Code, Section 1952 (Interstate Travel in Furtherance of Racketeering Activity), and Title 18 United States Code, Section 2421 (Transporting an Individual for Prostitution), involving John Edgar WILLIAMS IV, a/k/a "John the Baptist," a/k/a "Orange Juice," a/k/a "Tre57," a/k/a "Tre5," and Jeremy Mindez RUFF, a/k/a "J7," a/k/a "Payday," Savanna D'naisha May GAGE, a/k/a "Pretty," Nevaeh Charise COX, a/k/a "Vaeh," Trinity GOUDEAU, a/k/a "Bleu," Shavari MELTON, a/k/a "Vari" and others, for each account or identifier and date range listed on Attachment A, information pertaining to the following matters:

a.    Communication related to sex trafficking and drug trafficking;

b.    Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crime under investigation;

c.  Evidence indicating the geographic location of the cellular device at times relevant to the investigation;

d.  Evidence indicating the cellular device owner or user's state of mind as it relates to the crime under investigation;

e.  The identity of the person(s) who created the account associated with the cellular device and/or used the cellular device, including records that help reveal the whereabouts of such person(s).

f.  The identity of the person(s) who sent to and/or received communications from the cellular device about matters relating to sex trafficking and drug trafficking, including records that help reveal their whereabouts.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

3

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by **TextNow**, and my title is _____. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of **TextNow**. The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**. I further state that:

a.     all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of **TextNow**, and they were made by **TextNow** as a regular practice; and

b.     such records were generated by **TextNow's** electronic process or system that produces an accurate result, to wit:

1.     the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of **TextNow** in a manner to ensure that they are true duplicates of the original records; and

2.     the process or system is regularly verified by **TextNow**, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____        _____
Date                                        Signature

4